IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**DENNIS WILKERSON**                                                              **PLAINTIFF**

v.                                                              Civil No: 1:15-cv-00173-GHD-DAS

**LOWNDES COUNTY, et. al.**                                                       **DEFENDANTS**

## MEMORANDUM OPINION

Presently before this court are Defendants Lowndes County and Bobby Reeves' motion [50] for summary judgment and Defendant Steve Scott's motion [55] for summary judgment. Having considered the motions the Court finds that they should be granted in part and denied in part.

### Factual and Procedural Background

In this matter, Plaintiff Dennis Wilkerson seeks to recover against Defendants for seizing horses he owns and keeps at his stables in Lowndes County, Mississippi. Defendant Bobby Reeves is an animal control officer with the Lowndes County Sherriff's Department. Defendant Steve Scott is an animal control officer with the City of Columbus, located in Lowndes County. Pursuant to an agreement between the county and the city, the two partnered together to provide animal control services over the entirety of Lowndes County.

In late March 2014, Scott received a call from a woman who relayed to him a complaint from an anonymous source that some of the horses Wilkerson kept looked emaciated. Dep. of Steve Scott ("Scott Dep.") [50-4], at p. 11. As a result of the call, Reeves and Scott went to Wilkerson's property to check on the horses. *Id.* at p. 17–20.

The two arrived at the property, where they found Wilkerson. Dep. of Bobby Reeves ("Reeves Dep.") [50-3], at p. 29. Wilkerson proceeded to show the two the horses and his property,

including water stations for the horses and a barn containing hay. *Id,* at 29, 32–33; Scott Dep. at p. 24, 61–64. Scott took photographs of the horses while they were examining them. *Id.* Wilkerson admits that some of the horses were underweight at the time Reeves and Scott were at his property. Dep. of Dennis Wilkerson ("Wilkerson Dep.") [50-2] at p. 231. Reeves also claims he noticed that one horse had visible swelling on its scrotum. Reeves Dep. at 72. While they were being shown the property and horses, Scott asked Wilkerson questions about how Wilkerson fed the horses. Scott Dep. at p. 23-24. Wilkerson took offense to the manner in which Scott asked the questions. Wilkerson Dep. at p. 207–208. Wilkerson told Reeves that "If [Scott] pops off to me one more time, y'all can get off of my place." *Id.* at 211. According to Wilkerson, Scott then said that if he wanted he could come back with trailers and take all the horses. *Id.* at 211-12. Wilkerson responded that if they did return that they "better have a court order." *Id.* at 212.

According to Scott, the next day he visited Dr. Kerry Blanton, the veterinarian who Wilkerson told him had vetted the animals. Scott Dep. at 30. Scott asked Dr. Blanton about any potential infectious diseases that the horses might have been suffering from, because, according to Scott, Wilkerson had specifically stated that he was concerned that the horse with the swollen scrotum had some infectious disease. *Id.* at 30-31. Scott testified that Blanton told him that she had looked at the horse one evening while at a party at Wilkerson's house, but had not diagnosed the issue. *Id.* at 30. Wilkerson contends that Scott was aware that the swelling was caused by a non-infectious edema.

Two days after Reeves and Scott went to Wilkerson's property, Reeves filed an affidavit in the Lowndes County Justice Court, which read as follows:

> Before me, Peg Mordecai, Justice Court DC/Judge of said County Bobby Reeves whose address is Lowndes County S.O., makes affidavit that on or about the 26 day of March 2014, Dennis Wilkerson whose address is 1296 Stanley Road Caledonia, MS, did

> willfully and unlawfully[1] confine in a pasture, several horses, emaciated horses, that were deprived of proper substance [sic], i.e. hay, water, grain, medical care[2], in violation of section 97-41-2 To Wit: Approximately 20-25 horses to be seized by the Lowndes County Sheriff's Office.

Justice Court File [50-7], at p. 2. Afterwards, Reeves spoke to the Justice Court Judge Chris Hemphill about the condition of the horses, including the possibility of the presence of infectious disease in the horses. Reeves Dep. at p. 67–72.[3]

Judge Hemphill then entered an order finding that, after considering "eyewitness accounts and photographic evidence as well as admissions made to [Bobby Reeves] by Dennis Wilkerson," probable cause had been established pursuant to MISS. CODE ANN. § 97-41-2 that the horses were "being neglected due to a failure to provide sufficient food and/or medical care. . ." Justice Court File at p. 4 the order appointed Lowndes County as temporary custodian of all the horses on Wilkerson's property. Because of concerns of infectious disease, the order permitted the horses to actually remain at Wilkerson's property, pending a hearing to determine whether the horses should ultimately be forfeited. Justice Court File at p. 4–5.

During the time between the seizure and the hearing, Lowndes County hired Dr. Allen Etheridge, a veterinarian, to assess the condition of the horses. Dep. of Allen Etheridge ("Etheridge Dep.")[50-5] at p. 29–31. Etheridge assigned each of the horses a Body Condition Score between 1.0 and 9.0, Expert Opinion of Allen Etheridge ("Etheridge Op.")[50-6] at p. 9. According to a

---

[1] The affidavit was prepared on a fillable form, with spaces to fill in the averments. The words "willfully and unlawfully" were printed on the form.

[2] Reeves apparently meant "sustenance" rather than "substance". Reeves Dep. at p. 59. According to Reeves, he included "hay, water, grain, and medical care, to describe what sustenance was, not to allege that Wilkerson had deprived the horses of each of those things. *Id.* at p. 62.

[3] Reeves testified that he did not recall any specifics of his conversation with Judge Hemphill. However, it is undisputed that Reeves is the only person to provide oral testimony to Judge Hemphill before he issued the seizure order, which references the possibility of disease in the horses. Because Reeves' oral testimony, Reeves' affidavit, and the photographs were the only evidence presented to Judge Hemphill, it is clear that Reeves must have told Judge Hemphill about the potential disease.

description of scores attached to Dr. Etheridge's opinion, a score of 1 meant the horse was "extremely emaciated" while a score of 9 meant the horse was extremely fat" *Id.* at 13–14 Of the 24 horses in Wilkerson's care, Dr. Etheridge assigned 10 of them a score below 3.0. *Id.* at 9. Three of the horses were assigned a score below 2.0, which according to Dr. Etheridge meant "they were in critical condition and in imminent danger of death. Further it implies there was little, if any fat left in the horses." *Id.*

At the subsequent hearing, after being presented with further evidence regarding the condition of the horses, Judge Hemphill found that the horses should be returned to the custody of Wilkerson. Justice Court File at p. 5–6. Accordingly to Judge Hemphill this was because 1) the winter of 2013–2014 had been especially harsh; 2) Wilkerson had not "intentionally" neglected any of the horses; and 3) Wilkerson was willing able to provide adequately for the horses. *Id.* Custody of the horses was returned to Wilkerson.

Wilkerson subsequently brought this suit against the defendants alleging that Reeves and Scott violated his Fourth Amendment rights by providing false testimony and withholding exculpatory evidence from the Justice Court Judge in order to obtain the seizure order without probable cause. Wilkerson also alleges that Reeves and Scott did so to retaliate against Wilkerson in violation of his First Amendment rights. Finally, Wilkerson alleges state law claims of abuse of process and conversion.

## Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). *See* Fed. R. Civ. P. 56(a); *Johnston & Johnston v. Conseco Life Ins. Co.*, 732 F.3d 555, 561 (5th Cir. 2013). The rule "mandates the entry of

4

summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. 2548.

The party moving for summary judgment bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *See id.* at 323, 106 S. Ct. 2548. "An issue of fact is material only if its resolution could affect the outcome of the action." *DeBlanc v. St. Tammany Par. Sch. Bd.*, 640 Fed. App'x 308, 312 (5th Cir. 2016) (per curiam) (quoting *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 877 (5th Cir. 2003) (quoting *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 408 (5th Cir. 2002) (internal quotation marks omitted))).

Under Rule 56(a), the burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S. Ct. 2548; *Littlefield v. Forney Indep. Sch Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). The Court "'resolve[s] factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.'" *Thomas v. Baldwin*, 595 Fed. App'x. 378, 378 (5th Cir. 2014) (per curiam) (quoting *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (internal quotation marks and citation omitted)). "[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Id.* at 380 (quoting *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

5

## Analysis

Wilkerson makes the following claims: three § 1983 claims against Reeves and Scott for violating for First, Fourth, and Fourteenth Amendment rights; an state law abuse of process claim against Reeves, Scott, and Lowndes County; and a state law conversion claim against Reeves, Scott, and Lowndes County. The Court will first analyze the Fourth Amendment claim, because the Court's determination of the validity of the seizure order will affect Wilkerson's other claims.

### 1. Fourth Amendment Claim

Wilkerson also alleges that the Reeves and Scott violated his Fourth Amendment rights by providing materially false information and failing to provide exculpatory evidence to the judge in order to obtain the seizure order. Specifically, Wilkerson alleges that Reeves and Scott falsely told the judge that the horses were not being fed and that some of the horses may be exposed to infectious disease. Wilkerson also alleges that the Defendants failed to inform the judge that many of the horses were in good health. Wilkerson also alleges that the Defendants knew there was no evidence that Wilkerson intentionally cruelly treated, neglected, or abandoned the animals. Thus, they were unjustified in seeking the seizure order in the first place.

Defendants argue they are entitled to summary judgment for several reasons. First, they argue that the horses were not actually "seized" because they were not removed from Wilkerson's property. Second, they argue they are entitled to qualified immunity because the seizure order was not obtained through materially false information. Third, they argue that by presenting the evidence to an "independent intermediary," their actions did not cause the seizure order to be issued. Finally, they argue that it was not clearly established that they needed evidence that each horse was being mistreated in order to seize all of the horses.

Defendants first argue that because the horses were never actually removed from Wilkerson's property they were never "seized." That argument is not well-taken. "A seizure of

property occurs when there is 'some meaningful interference with an individual's possessory interests in that property.'" *Morris v. Livingston*, 739 F.3d 740, 751 (5th Cir. 2014) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984)). The seizure order makes clear that the Lowndes County Sheriff's Department was granted temporary possession of the horses, that the Department had a right to access the horses without Wilkerson's permission, and that it was within the Department's discretion to determine where the horses should be kept. Justice Court File at p. 3–6. Had Wilkerson attempted to remove horses from the property or prevented the Department from accessing the horses, he would have been in violation of the order. Thus, there was meaningful interference with his possessory interest in the horses. The horses were "seized" for the purposes of the Fourth Amendment.

Next the Court must determine whether Defendants are entitled to qualified immunity. "'[A] plaintiff seeking to defeat qualified immunity must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.""" *Da Vinci Inv., Ltd. P'ship v. Parker*, 622 F. App'x 367, 374 (5th Cir. 2015) (per curiam) (quoting *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (quoting *al-Kidd*, 563 U.S. at 735, 131 S. Ct. 2074)). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 179 L.Ed.2d 1149 (2011) (alterations in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L.Ed.2d 523 (1987)).

It is clearly established that a Fourth Amendment violation occurs when an officer secures a warrant by providing false information knowingly or with reckless disregard for the truth.

*Freeman v. Cnty. Of Bexar*, 210 F.3d 550, 553 (5th Cir. 2000) (citing *Franks v. Delaware*, 438 U.S. 154, 171, 98 S. Ct. 2674, 57 L.Ed.2d 667 (1978))). "[I]ntentional misrepresentations in warrant applications and material omissions from the same may give rise to Fourth Amendment claim." *Johnson v. Norcross*, 565 F. App'x 287, 289 (5th Cir. 2014) (citing *Kohler v. Englade*, 470 F.3d 1104, 1113–14 (5th Cir. 2006)).

Thus, to prevail, Defendants must show that there is no genuine issue of material fact whether 1) Defendants included materially false evidence or knowingly or recklessly omitted exculpatory evidence in obtaining the seizure order; or 2) without the evidence, probable cause would not have been established. *Johnson*, 565 F. App'x at 289 (citing *Freeman*, 210 F.3d at 553 (citing *Franks*, 438 U.S. at 171, 98 S. Ct. 2674)).

Under the first prong, there must be evidence that the officers "through material omissions or otherwise, made 'a false statement knowingly and intentionally, or with reckless disregard for the truth.' " *Winfrey v. Rogers*, 882 F.3d 187, 198 (5th Cir. 2018) (citing *Franks*, 438 U.S. at 155, 98 S. Ct. 2674). "Negligence alone will not defeat qualified immunity." *Brewer v. Hayne*, 860 F.3d 819, 825 (5th Cir. 2017). Instead there must be proof that the defendant "'in fact entertained serious doubts as to the truth' of the statement." *Hart v. O'Brien*, 127 F.3d 424, 449 (5th Cir. 1997) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S. Ct. 1323, 20 L.Ed.2d 262 (1968)), *abrogation on other grounds recognized by Spivey v. Robertson*, 197 F.3d 772, 775 (5th Cir. 1999).

Under the second prong, the Court must determine whether "the allegedly false statement is necessary to the finding of probable cause . . ." *Franks*, 483 U.S. at 156, 98 S. Ct. 2674. To do so, the Court must excise the false statements, and then determine whether a warrant would still issue with those statements removed. *Winfrey*, 882 F.3d 187, 199 (citing *Franks*, 483 U.S. at 156, 98 S. Ct. 2674)); *United States v. Bankston*, 182 F.3d 296, 305–06 (5th Cir. 1999).

Wilkerson identifies three misstatements or omissions that he contends are materially false. The first is that Reeves falsely alleged the horses were being deprived of food, shelter, water and medical care in his affidavit. The second is that Reeves failed to inform Judge Hemphill that a number of the horses appeared healthy. The third is that Reeves falsely alleged that some of the horses were suffering from an infectious disease.

The Court need not determine whether Reeves made these statements knowingly or with reckless disregard to the truth, because the remaining statements within Reeves' testimony to the Justice Court still established probable cause.

Wilkerson argues that some evidence that the owner was intentionally mistreating the animals is necessary to establish probable cause under the seizure statute Thus, he argues, if Reeves gave false statements to the judge that Wilkerson was not giving hay to the horses or providing them with medical care while they were diseased, and if Reeves failed to inform the judge that many of the horses were in good health, the judge could have wrongly believed that Wilkerson was intentionally failing to care for the horses. Without the false statements, or with the exculpatory evidence, Wilkerson argues that the judge would have not found probable cause to seize the horses.

He further contends that § 97-41-2(1) must be read in conjunction with § 97-41-1, which provides that provides that anyone who "intentionally or with criminal negligence" treats an animal cruelly is guilty of a misdemeanor. According to the Wilkerson, this means that the probable cause finding of § 97-41-2(1) must be based on some evidence that the owner intentionally mistreated the animal in some way, and the Defendants must believe Wilkerson intentionally mistreated the animals.

The Court disagrees that probable cause under § 97-41-2 requires considerations of intentional mistreatment. First, even if the Court were to agree that it is appropriate to read the statutes together, Wilkerson's argument is inconsistent with § 97-41-1, which establishes "criminal negligence" as the minimum mental state necessary for the crime. "Criminal negligence" has long been defined in Mississippi as negligence that is "reckless or wanton and of such a character as to show an utter disregard of the safety of others under circumstances likely to cause injuries." *Perrett v. Johnson*, 253 Miss. 194, 200, 175 So. 2d 497, 499 (1965). Thus, even under Wilkerson's reading of the statutes, probable cause would exist where there was reason to believe the owner was negligent in caring for the animals to the point that the animals were in danger of injury.

Second, the statute by its plain terms states that testimony about the "condition of the animal" is sufficient to establish probable cause for seizure. MISS. CODE ANN. § 97-41-2(1).

Third, it is clear from reading § 97-41-2 as a whole that a primary focus of the statute is the *ability* of an owner to care for his animals. Despite being in the section of the code entitled "Crimes," § 97-41-2 affixes no criminal penalties on the owner. Subsection (2) provides that an owner may request a hearing to determine whether he is fit to have custody of the animal. The purpose of this hearing is to determine "whether the owner is *able* to provide adequately for the animal and is *fit* to have custody of the animal." *Id.* at subsection (2) (emphasis added). Factors the judge may consider in determining the owner's fitness to have custody are:

> (a) Testimony from law enforcement officers, animal control officers, animal protection officials, and other witnesses as to the condition the animal was kept in by its owner or custodian.
>
> (b) Testimony and evidence as to the type and amount of care provided to the animal by its owner or custodian.
>
> (c) Expert testimony as to the proper and reasonable care of the same type of animal.

> (d) Testimony from any witnesses as to prior treatment or condition of this or other animals in the same custody.
>
> (e) Violations of laws relating to animal cruelty that the owner or custodian has been convicted of prior to the hearing.
>
> (f) Any other evidence the court considers to be material or relevant.

*Id.* at subsection (3). Beyond forfeiture of the animal, a finding against the owner carries no penalties. By the terms of the statute, an animal is subject to forfeiture where the owner is factually unable to care for it, even if the owner had the best intentions for the animal. Accordingly, evidence of intent is not necessary[4] to establish probable cause for a seizure order under § 97-41-2(1).

Reeves stated in his affidavit that several of the horses were emaciated. Justice Court File at p. 2. It is not disputed that many of the horses were underweight, some seriously so. That evidence was the only evidence necessary to establish probable cause to seize the horses. Thus, Wilkerson is unable to show that without Reeves' allegedly false statements, the seizure order would not have been entered, because the remaining testimony was sufficient to establish probable cause.

Wilkerson further argues that even if Reeves needed only to testify about the physical condition of the horses to establish probable cause to seize them, Reeves did not have evidence that all 24 of the horses were emaciated, or that infectious diseases was present to justify the seizure of the entire group. In other words, because the order directed the seizure of all 24 horses, Wilkerson argues that Reeves must have either falsely told Judge Hemphill that all 24 horses were emaciated, falsely told Judge Hemphill that infections disease was present in some of the horses,

---

[4] In fact, had Reeves and Scott believed Wilkerson was intentionally mistreating the animals—in other words committing criminal animal cruelty—they would have been permitted to seize the horses without a warrant at all. Wilkerson's reading of the statute renders the pre-seizure order requirement entirely unnecessary. *See* MISS. CODE ANN. § 97-41-2(8); *Alverson v. Harrison Cty., Mississippi*, No. 1:13-CV-467-LG, 2015 WL 13081329, at *2 (S.D. Miss. Apr. 15, 2015)(holding that both Mississippi law and the Fourth Amendment permit an officer to seize animals the officer believes are being subjected to criminal animal cruelty without a warrant), *aff'd sub nom. Alverson v. Harrison Cty., Miss.*, 643 F. App'x 412 (5th Cir. 2016)

or failed to mention that a number of the horses appeared to be healthy. Thus, he argues, Reeves improperly obtained the seizure order for the horses that were not emaciated.

Reeves' affidavit states only that "several" of the horses were in poor condition. Justice Court File at p. 2. It is uncontested that some of the horses were underweight. Wilkerson Dep. at p. 231. Thus, at the least, Reeves did not make false statements about the number of horses that were emaciated "for use in an affidavit in support of [the seizure order]". *Melton v. Phillips*, 875 F.3d 256, 262 (5th Cir. 2017).

Additionally, there is no evidence in the record that Judge Hemphill ordered all of the horses to be seized because of the presence of a disease. Rather the order references disease as a justification for allowing the horses to remain on Wilkerson's property, rather than moving them. Justice Court File at pp. 3–4.

Wilkerson asks this Court to assume that because the seizure order stated "that said horses are *all* in a malnourished state and in poor health," Justice Court File at p. 3, that Reeves must have testified that fact to the judge. However, it is not clearly established that an officer needed to believe that each animal in a herd is being neglected in order to obtain an order to seize them all. Section 97-41-2 provides no guidance. Wilkerson fails to point to any case-law establishing that an officer, armed with the belief that some animals in a group are being neglected, cannot constitutionally seize the entire group. "Common sense suggests that the mistreatment of some animals might suffice to establish probable cause for the temporary seizure of all the animals in these circumstances." *Brown v. Tull*, 218 F.3d 743 (5th Cir. 2000).

Accordingly, the Court first finds that no constitutional violation has occurred because Reeves and Scott were armed with a valid seizure order to seize all of the horses, and that there is no genuine dispute whether the seizure order would have issued absent any allegedly false

statements by Defendants. The Court also finds that the Defendants are entitled to qualified immunity to the extent that either officer sought to seize all of the horses despite only identifying some of them as emaciated.

### 2. First Amendment Retaliation Claim

Wilkerson also argues that Reeves and Scott instituted the seizure proceedings against him, not because they believed he was neglecting the horses, but because of the verbal exchange that took place between Wilkerson and the officers, wherein Wilkerson told the officers to leave his property, in violation of his First Amendment rights.

To establish a First Amendment retaliation claim, a plaintiff must show that "(1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). Further the plaintiff must show the absence of probable cause. *Id.* at 260.

As to the first element, the parties agree that there was some exchange of words between Wilkerson and the officers, where Wilkerson told Scott that he would throw Scott off the property if Scott kept disrespecting him. *See* Reeves Dep. at p.38; Wilkerson Dep. at p. 173. It has long been established that the First Amendment "protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston v. Hill*, 482 U.S. 451, 461, 107 S. Ct. 2502, 96 L.Ed.2d 398 (1987); *Lewis v. City of New Orleans*, 415 U.S. 130, 94 S. Ct. 970, 39 L.Ed.2d 214 (1974).

As to the second element, there is no dispute that Reeves instituted a proceeding to seize Wilkerson's property. In analyzing a retaliation claim, a court must determine, "whether a person of ordinary firmness would have been deterred from . . . continuing to criticize [the officers]."

*Keenan*, 290 F.3d at 259. Seizing Wilkerson's property would be "sufficiently intimidating to chill" Wilkerson's criticism. *See Rolf v. City of San Antonio*, 77 F.3d 823, 827–28 (5th Cir.1996) (rejecting Rule 12(b)(6) dismissal of retaliation claim where plaintiffs alleged property was condemned because they opposed city's construction of reservoir).

Scott argues, individually, that the record shows that Reeves alone made the decision to obtain the seizure order, and, so, Scott took no adverse action against Wilkerson. He points to testimony where Reeves repeatedly states that the decision to go see the judge was his "ultimately" his decision. *See* Reeves Dep. 54–56. However, in the immediately preceding testimony, Reeves states:

> Q: So how did you come about going to Justice Court on the 26th? How was that decided?
>
> A: I think we met somewhere on that day and said—the morning of the 26th, that what we were going to do.
>
> Q: Okay. The decision on the 24th that you felt you had to go to a Justice Court Judge, was that a joint decision of yours and Mr. Scott's?
>
> A: Yes.
>
> Q: Okay. When y'all met on the 2th, the decision to go see the judge on the 26th, would have been a joint decision of yours and Mr. Scott's?
>
> A: Yes.

Reeves Dep. at 53–54. Thus, there is a factual dispute about whether Scott and Wilkerson jointly made the decision to see the Justice Court Judge, or whether Wilkerson made that decision alone. Summary judgment in favor of Scott is not appropriate on that basis.

The motion, then, turns on the third element—whether there is a material issue of genuine fact as to whether Reeves and Scott were substantially motived to seize the horses because of Wilkerson's statements.

Defendants together argue there is no evidence that they were motivated by Wilkerson's statements rather than the condition of the horses. In response, Wilkerson submits the testimony of T.J. Carr, his farrier, who stated that Dr. Etheridge told Carr that "[Wilkerson] pissed them off, and they were going to make an example out of him." Deposition of T.J. Carr ("Carr Dep.") [65-5], at p. 60. Dr. Etheridge denies making that statement to Carr. Etheridge Dep. at p. 58.

Defendants object to the use of this testimony to defeat summary judgment as inadmissible hearsay under Fed. Rule Civ. P. 56(c)(2). Wilkerson contends that it admissible because Dr. Etheridge was an agent of Lowndes County at the time the statement was made, having been hired to perform the body score assessment on the horses, and thus the statements are an admission by Defendants' agent under Fed. Rule Evid. 801(2)(c). Lowndes County, however, is not being accused of a First Amendment violation; Reeves and Scott, in their individual capacity are. There is no evidence in the record that suggests Dr. Etheridge was, at the time, an agent of Reeves and Scott, and so anything he may have told Carr, is not an admission on behalf of Reeves and Scott.

Nonetheless, even without this evidence, a jury could infer that Wilkerson's statements to Reeves and Scott, rather than the condition of the horses, prompted them to investigate further and ultimately apply for the seizure order. The Fifth Circuit has warned that causation issues in First Amendment retaliation claim such as these "should rarely be resolved at the summary judgment stage of litigation." *Advanced Tech. Bldg. Sols., LLC v. City of Jackson, Miss.*, No. 3:12-CV-389-LG, 2014 WL 3783949, at *6 (S.D. Miss. July 31, 2014) (citing *Haverda v. Hays Cnty*, 723 F.3d 586, 595-96 (5th Cir. 2013)).

Defendants further argue that even if there were such a factual dispute concerning their motivation, the existence of probable cause defeats the First Amendment retaliation claim.

15

Wilkerson argues that because probable cause was obtained through a *Franks* violation, it does not exist to bar his retaliation claim.

The law of the Fifth Circuit establishes that absence of probable cause is a necessary element of a First Amendment retaliation claim, because "the objectives of law enforcement take primacy over the citizen's right to avoid retaliation." *Keenan*, 290 F.3d at 261-62; *see also Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008) ("If [probable cause] exists, any argument that the arrestee's speech as opposed to her criminal conduct was the motivation for her arrest must fail."). The Court has found that in this case a valid order based on probable cause existed, and that it was not obtained through a *Franks* violation. Thus, under the law of the circuit, the retaliation claim, normally, ought to be dismissed.

However, currently pending before the United States Supreme Court is *Lozman v. City of Riviera Beach*, No. 17-21, wherein the Supreme Court will decide whether the existence of probable cause operates as an absolute bar to a First Amendment retaliation claim. *See* Brief of Petitioner at i, *Lozman v. City of Riviera Beach*, No. 17-21 (U.S. Dec. 22, 2017). Because a decision in that case will affect the disposition of Wilkerson's retaliation claim in the case *sub judice*, the Court finds that it should, rather than dismissing the claim, hold it in abeyance, until a decision is rendered in *Lozman*.

### 3. Fourteenth Amendment Claims

Wilkerson alleges that Defendants violated his Fourteenth Amendment rights by depriving him of liberty and property without due process. To state a Fourteenth Amendment due process claim under § 1983, "a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest." *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001). Wilkerson alleges defendants interfered with his liberty interest

in running his business free of false allegations by falsely alleging he was mistreating the horses and by seizing them.

The Fifth Circuit has consistently held that reputational injuries brought as § 1983 claims require a showing of "stigma plus an infringement of some other interest." *San Jacinto Sav. & Loan v. Kacal* 928 F.2d 697, 701 (5th Cir. 1991) (citing *Connelly v. Comptroller of the Currency*, 876 F.2d 1209, 1215 (5th Cir. 1989)). In his reply brief, Wilkerson concedes that he cannot meet that burden. Pl.'s Memo. in Opp. [64] at p. 31. Accordingly, his Fourteenth Amendment claims fail.

### 4. State Law Abuse of Process Claim

Wilkerson also contends that Defendants committed an abuse of process by instituting the seizure proceedings after the verbal exchange between Wilkerson and the officers.

"An abuse of process claim requires the plaintiff show (1) the defendant made an illegal use of a legal process, (2) the defendant had an ulterior motive, and (3) damage resulted from the perverted use of process." *Hudson v. Palmer*, 977 So. 2d 369, 380 (Miss. App. 2007) (citing *Ayles v. Allen*, 907 So. 2d 300 (Miss. 2005)). Such a claim appears to necessarily require proof of malice, which brings such conduct out of the course and scope of employment under the Mississippi Tort Claims Act. *See* MISS. CODE ANN. § 11-46-5(2)(Mississippi does not waive immunity for any conduct of employee that constitutes malice, among other things.) Lowndes County, therefore, retains immunity against such claims. *See Zummalt v. Jones County Bd. Of Sup'rs*, 19 So. 3d 672, 688 (Miss. 2009) (holding intentional torts in which malice is an essential element "are outside the scope of the MTCA's waiver of immunity."); *see also Univ. of Miss. Med. Cntr. v. Oliver*, ___ So. 3d ___, 2017 WL 3641246 at *6 (Miss. 2017) (holding malicious prosecution claim fails outside of MTCA's waiver of immunity).

Further, abuse of process claims are subject to the one-year statute of limitations for intentional torts. *See* MISS. CODE ANN. § 15-1-35; *Gatheright v. Clark*, 680 F. App'x 297, 302 (5th Cir. 2017) (citing *City of Mound Bayou v. Johnson*, 562 So. 2d 1212, 1218 (Miss. 1990)). The complained of actions in this case began in March 2014 and ended in May of 2014. This suit was not brought until September 25, 2015. Thus, the abuse of process claim was brought outside the applicable statute of limitations. Accordingly, the abuse of process claim against all Defendants must be dismissed.

### 5. State Law Conversion Claim

Wilkerson finally claims that Defendants committed conversion by improperly seizing the horses. Under Mississippi law, a claim for conversion requires "proof of a wrongful possession, or the exercise of a dominion in exclusion or the defiance of the owner's right, or of an unauthorized and injurious use, or of a wrongful detention after demand." *Smith v. Franklin Custodian Funds, Inc.*, 726 So.2d 144, 149 (Miss. 1998).

Wilkerson concedes that if Defendants possessed a valid seizure order based on probable cause, then there was no wrongful possession. The Court has found that that the Defendants possessed a valid order. Therefore, no conversion occurred, and this claim must be dismissed.

### Conclusion

The Court finds that there is no genuine issue of material fact whether Reeves and Scott committed a Fourth Amendment violation in obtaining the order to seize Wilkerson's horses. Therefore, Wilkerson's Fourth Amendment claims should be dismissed. The Court finds that Lowndes County is immune to Wilkerson's abuse of process claim, and that the claim was brought outside the one year statute of limitations against all Defendants. The Court also finds that because the seizure of the horses was based on a valid order, no conversion occurred. Accordingly, Wilkerson's abuse of process and conversion claims should be dismissed.

Finally, the Court finds that it should await the United States Supreme Court's decision in *Lozman v. City of Riveria Beach*, No. 17-21, before ruling on Wilkerson's First Amendment claims claim. Thus, the Court will deny Defendants' motion with respect to those claims. Defendants may renew their motion once the United States Supreme Court has rendered their decision.

An order in accordance with this opinion shall issue this day.

This, the 12th day of March, 2018.

_____
SENIOR U.S. DISTRICT JUDGE